" SUPPLEMENT IN SUPPORT OF TRUTH"

" POLICE MISCONDUCT"

CA 07-276S

" THE OFFICERS PERJURED TESTIMONY "

On direct examination at trial, officer scott petrocchi testified that while chasing the defendant, he observed him to be carrying a firearm, a black firearm in his right hand. Tr. 9/27/04/, 18:10-11. in his radio broadcast, however, petrocchi testified that it looks like he's got a gun in his hand. Gov. Exh. 2A. He continued to chase the defendant and, while doing so, observed him drop the firearm from his hand to the ground and continued running. Tr. 9/27/04/, 19:21-23. According to petrocchi, he saw the defendant drop the firearm in the back yard of 137 Glenbridge and then "chased him into 139 Glenbridge Avenue." Tr. 9/27/04/,20:1, 6-7. Later in his testimony, heclarified that "pretty much right as I broadcasted the description, we were in that backyard is when he dropped it". Tr. 9/27/04/, 26:6-8.

On cross-examination, petrocchi repeated that the defendant dropped the gun in the rear of 137 Glenbridge Avenue before running into the rear of 139 Glenbridge. Tr. 9/27/04/, 44:13-23. petrocchi could not recall if ther was a fence between the two yards. Tr. 9/27/04/, 46:18-19. Indeed, at that point in his testimony, he could not recall going over any other fences after the first one. Tr. 9/27/04/, 49:6-7. It was not untill redirect examination that he changed his testimony to state that he had found the gun in the yard of 139 Glenbridge, not 137, and that 139 was consistant with his police report. Tr. 9/27/04/, 57:2-22.

On recross-examination he also changed his testimony to reflect that he had indeed jumped over a second fence to get into the rear yard of 139 Glenbridge. Tr. 9/27/04/, 72:10-12.

After the defendants arrest, petrocchi testified, he and Hames "walked back to the location that he dropped the firearm," which he identified again as 137 Glenbridge Avenue. Tr. 9/27/04/, 21:8-24. there according to petrocchi's direct testimony, he found the gun. Tr. 9/27/04/, 21:24-25, 22:1. On cross-examination, petrocchi specified that it was <u>he</u> who found the gun. Tr. 9/27/04/,55:21-22.

Hames testified, however, that it was Hames himself who found the gun. After hearing petrocchi's broadcast that the defendant was heading toward Barbara street, which intersects Glenbridge Avenue, Hames took a right on Barbara Street and observed petrocchi and Moscarelli apprehending the defendantTr9/27/04/, 77:8-13. According to Hames, although he then walked through the backyards with petrocchi, it was Hames who "observed a black, small semi-automatic handgun laying in the grass next to a pair of what looked like yellow sunglasses in the grass behind 139 Glenbridge Avenue."Tr.9/27/04/,79:5-9.

Hames confirmed that after the defendant was arrested, he and petrocchi "started to respond back to the yards, back to the area where <u>I</u> found the gun." Tr. 9/27/04/, 80:8-10.(emphasis added).

Kennedy's offence Report and his testimony further indicates that it was Hames, and not petrocchi, who found the gun. Gov.'s Exh. 8; tr. 9/28/04/, 26:16-21. Moreover, Kennedy testified that after he saw the defendant had been apprehended, he "went back to the area where we first started the pursuit along with patrolman Hames." Tr. 9/28/04/,26:1-3.

Kennedy, now with Hames, broadcasted to petrocchi that "we got a Glock." Tr.9/28/04/, 25:23; Gov.'s Exh. 2B. petrocchi responded to kennedy's broadcast, "Isaw it in his hand when I came around the corner. [uninteligible] I saw it in his hand, so...." Gov.'s Exh. 2B.

Hames also testified that the defendant was wearing what "looked like yellow sunglasses on his forehead" when he saw the defendant exit the vihicle Tr. 9/27/04/, 77:5-6. petrocchi, however, never mentioned this evidence."the sunglasses were taken from my possession"! Although Hames testified that the defendant "was looking at me, but running the other way" after he exited the vihicle, Tr. 9/27/04/, 90:22. Hames did not observe the defendant carring a gun. Tr. 9/27/04/, 78:12-14.

"The sworn testimony by the providence police is clearly seen inconsistant, false, decieved, and untrustworthy!"

"<u>Detective Renzi's false Testimony</u>"

Detective Renzi testified that the gun was found at the scene with ten bullets loaded in the magazine. Tr. 9/27/04/, 106:22-24.
After stateing his years of experience in fingerprinting, Renzi testified that he did not test the gun for prints. Tr. 9/27/04/, 108:17-19.
He explained that it was the policy of the BCI unit at the time of the incident not to fingerprint "firearms that were seized on someone's person."Tr.9/27/04/, 108:21-23. Renzi also testified, without further explication, that this policy applied to "accessories to the gun,"such as bullets and magazines. Tr.9/27/04/, 126:11-14.

According to Renzi, the "lower part" of the gun seized from the scene was plastic and "very pitted", "making it near impossible to get fingerprints." Tr. 9/27/04/, 110:8-10. Renzi further explained that while "smooth, clean, shiny surfaces" were the "optimum surface for

fingerprints," textured and rougher surfaces were dificult and almost near impossible." Tr. 9/27/04/, 109:18-24. thus, Renzi testified, "given the surfaces... it was our practice not even to fingerprint weapons when they're in someone's possession." Tr. 9/27/04/, 110:17-20. Nonetheless, over his career he had tested "near a hundred" weapons for fingerprints and had found a fingerprint on two of them. Tr.9/27/04/, 110:21-25.

On cross-examination, Renzi testified that the policy not to test weapons for fingerprints had changed susequent to the defendants arrest. Tr.9/27/04/, 121:10-13. At the time of trial, the policy was to fingerprint "any weapon seized regardless of circumstances." Tr. 9/27/04/, 121:11-13. Although he could not testify to the reason behind the policy change, Renzi "believed" it came down from the federal agencies, and got passed down to our department..." Tr. 9/27/04/, 125:25-126:1. Further, the department was "verbally" told of this policy change, and that he had nothing in writing about it. Tr. 9/27/04/, 126:6-7.

Renzi testified that when he arrived on the scene, he had observed the sunglasses "about a foot away or so " from the gun. Tr.9/27/04/, 120:6-8. Despite the fact that he had seized the sunglasses as well, and that glasses provide a good surface from which to obtain fingerprints, "Detective Renzi falsely testified in telling the court and jury that he did not fingerprint the sunglasses either. Tr. 9/27/04/, 125:14-17. Instead, he "visually observed the glasses" for latent prints and falsely testified that he saw none! Tr.9/27/04/, 125:2-6. "My sunglasses were taken from my possession at the time of my apprehention." "My fingerprints were on my sunglasses"!

"The firearm was fingerprinted". Evidence I trying to obtain from the FOIA/PA/ will prove the God Honest Truth!
"I have been framed, and the police committed perjury"!

"All the officers committed perjury". petrocchi's false testimony was wholly unreliable. It is undisputed that he was confused because he wasn't telling the truth! Tr. 9/27/04/, 57:21-22. For example, and most significantly, he testified that he had found the gun, when the testimony of the other officers as well as transcript GX-2B proves that he had not. He at first falsely testified to the gun being droped in the rear of 137 Glenbridge Ave, and then later testified to the gun being droped and found in the rear of 139 Glenbridge Ave! Initially, he falsely testified that he did not remember jumping any fences, but later admmitted doing so only after evidence clearly proved that he must have come accross fences!

"All the officers testimony was inconsistant and clearly seen to be perjurous". petrocci's testimony was false! according to his written statement he specifically stated that he imediately put out a call of a man with a black gun in his right hand! his statement is not what the transcipt says. Mysteriously only hames and Detective Renzi testified to the sunglasses being right where the gun was found, petrocchi,kennedy,and Moscarrelli never mentioned such evidence! petrocchi who testified that it was he who found the gun never testified to the glasses right near the gun!

The testimony of scott petrocchi in linking the firearm to the defendant is without a dought "Untrustworthy".
Detective Renzi comitted perjury in testifying that he did not fingerprint the firearm or the sunglasses. there is no reason why Renzi would not have fingerprinted the firearm and sunglasses!
it is simply not credible that Renzi would not take the time to fingerprint the glasses or the gun within one feet from one another in an effort to connect the defendant in any way to that seized evidence.

"The truth is,the firearm was fingerprinted in my presence and can be proven"

"With my request to the freedom of information act,privacy act, if disclosed of honestly the truth will be right before the eyes of justice! I have been framed by corrupted members of the providence police department who all committed perjury in the court of Law"!!!!

# CERTIFICATE OF SERVICE

I Alberto Rodriguez hereby certify under the penalty of perjury that the foregoing SUPPLEMENTS IN SUPPORT OF MOTION 2255 was placed in the institutional mail on the 8th day of AUG 2007 and mailed to THE HONORABLE CLERK FOR THE DISTRICT OF RHODE ISLAND.

Honorable Court Clerk,
One Exchange Terrace
Providence, R.I. 02903
District of Rhode Island.

Respectfully Submitted
Alberto Rodriguez
P.O. Box 1000
Otisville, N.Y. 10963

Alberto Rodriguez

"SUPPLEMENT IN SUPPORT OF TRUTH"
"PROSECUTORIAL MISCONDUCT" CA 07-276S

"THE PROSECUTORS WITHHOLDING OF EVIDENCE"
"AND USE OF KNOWN PERJUROUS TESTIMONY"

In Accordance to the Jenks Act 18 U.S.C. 3500, and Brady v.Maryland the Government must disclose known Exculpatory Evidence before the Grand Jury before seeking anindictment agianst the subject of the investigation and has a continueing obligation to do so threwout and during the intire proceedings and trial, in which the prosecutor Richard W.Rose failed to do.

On 11/28/03/ in the city of providence defendant was framed and arrested by corrupted police officers of the providence police department for gun possession. the defendant was arraign in the state district court in providence followed by arraignment in the providence superrior court. the defendant entered a plea based on the truth Not Guilty,in both courts. the defendant was held without bail do tb being presented as a violator in regards of a ten year suspended sentence imposed by the court for a prior offence.

Approximately one week of the defendants arrest came forward the person who truly possesed the firearm,on her own free will! this person was Susan Bionchi a person in the vihicle the police pulled over in which the defendant ran from.

Susan Bionchi conffesed to Attorney Mathew Smith who was representing the defendant.
The Confession was Explained in detail to Attorney Smith who then provided a sworn statement in which Susan Bionchi wrote in respect to the truth,and Adopted it on the truth as well!

This confession and sworn statement was presented to the prosecutor in the superior court and then presented to the Judge of the court. However, Bionchi was not present in the courtroom at that time. The judge after being told of the confession and the sworn statement inspected it, Then postponed the violation hearing and ordered Susan Bionchi to be present in person in the vourtroom! Bionchi appeared in the courtroom as ordered by the Judge.

This violation hearing was continued over and over for five and a half months without my request!
during this period of five and a half month I was taken back and forth to the district and superior court without ever seeing a judge!
during this time I was offered a two year prison term which I denied.
Susan Bionchi was allways present in the courtroom even though I was never taken up to the courtroom to proceed with proceedings.

On thursday 3/25/04/ I was again in the superior court cellblock when attorney Mathew Smith came down to the cellblock and told me that the firearm was fingerprinted and negative of my prints. he also told me that the police changed thier story. "He then told me that Susan Bionchi was being turned over and I was being Discharged from costody!"

"Unfortunately and Mysteriously" I was indicted by a federal grand jury on 4/7/04/.
I was then court appointed Attorney Olin Thomson who I informed of Susan Bionchi's confessions and sworn written statement in which he acted as if he did not know! After Mr. Thomson was informed threw me of Bionchi's confession's and sworn statement, he told me that he contacted attorney smith and was waiting for the sworn statement! "Mysteriously" he waited and never recieved anything from attorney smith as expected!

After about a month I had my mother pick up the statement from attorney smith in which she personally dilivered to the U.S.District court who excepted it!
Sometime in june of 2004, Susan Bionchi contacted the then U.S.Attorney Craig Moore who she also Confessed the truth! the government's Attorney Moor told Bionchi that it was not his concern and told her to explain that to Olin Thomson in which Bionchi did!

"Mysteriously" Richard Rose never Mentioned or disclosed such information!

Under Brady, the government's failor to disclose Exculpatory Evidence Violates Due Process!
in the case at hand assistant attorney Rose was well aware of the facts surrounding the case at the state levil before he chose to indict!
The prosecutor was well aware threw his agencies in investigations at the state and federal levil! the prosecutor kept silent.
Richard W.Rose totally intentionally ignored disclosure of Bionchi's sworn statment as well as her confession's to so many members of the justice system on her admission's to the truth before indictment, and at trial!

Pursuant to judge Martin's discovery order, the government was ordered under his obligation to disclose all know Exculpatory, Impeachment, Material, Evidence in Accordance with the Jenks Act 18 U.S.C. 3500, Brady V.Maryland, Giglio V. u.s. and several others. Defendant Alberto Rodriguez was also ordered to disclose and provide the government with same. Judge Martin's order was a two way street order. Defendant Complied!

However, the assistant attorney for the government Richard w.Rose lied in stateing to the court that all discovery and disclosure have been met by both party's!
The United States Assistant Attorney Richard W.Rose Shield and failed to Disclose well known exculpatory,impeachment,material, evidence well known to him and his agencies in investigation's prior to indictment and threwout the intire trial proceedings!
the government also shield disclosure of exculpatory impeachment material evidence after his rebuttal witness testified falsly after recanting as defence witness in proceedings!

18 U.S.C 3500(b) (1982 & SUPP. IV 1986); FED. R. DRIM. P. 26.2(a).
The government must disclose statements of witnesses testifying during both case-in-chief and rebuttal. See United States v Newman, 849 F.2d 156,159-60 (5th cir. 1988) (Pretrial Statements of Rebuttal Witnesses Discoverable)

A pretrial agreement between the defendant and the government to disclose all witness'Jenks Act statements releaves the defendant of the burden of requesting each witnesses 'statements during trial. See U.S. v Newman, 849 F.2d 156, 159 (5th cir. 1988)

(pretrial agreement to disclose Jenks Act materials obligates government during trial to produce statements made by both case-in-chief and rebuttal witnesses; No burden on defendant to request materials during trial).

The Supreme Court in Brady v Maryland held that the governments failure to disclose known exculpatory impeachment evidence violates due process if the evidence is material and may change the outcome of trial.

The supreme court held that nondisclosure by the government of impeachment or exculpatory evidence know to him amounts to constitutional error if the withheld evidence could have in any way changed the outcome of the trial!

without a dought the prosecutors failure to disclose Susan Bionchi's many confessions and sworn statement deprived me of a fair truthful trial. the jury was never made aware of the true facts of the case. the jury diliberated being decieved by the providence police. had the assistant attorney Ror the government Richard Rose been truthful in his representation the jury would have deliberated on the truth and facts!

# CERTIFICATE OF SERVICE

I Alberto Rodriguez hereby certify under the penalty of perjury that the foregoing SUPPLEMENTS IN SUPPORT OF MOTION 2255 was placed in the institutional mail on the 8th day of AUG 2007 and mailed to THE HONORABLE CLERK FOR THE DISTRICT OF RHODE ISLAND.

Honorable Court Clerk,
One Exchange Terrace
Providence, R.I. 02903
District of Rhode Island.

Respectfully Submitted
Alberto Rodriguez
P.O. Box 1000
Otisville, N.Y. 10963

Alberto Rodriguez

"SUPPLEMENT IN SUPPORT OF TRUTH"
"INEFFECTIVE ASSISTANCE OF COUNSEL"

CA 07-276S

"COUNSEL'S FAILURE TO CROSS-EXAMIN GOVERNMENT WITNESS WHO TESTIFIED FALSLY FOR THE GOVERNMENT AFTER RECANTING AS DEFENCE WITNESS"

The performance by attorney Robert Mann during the government's rebuttal undermined the proper functioning of the adversarial process. attorney Mann's failure to cross-examin Bionchi about many confession's, including to himself, and prior statement, in which she confessed to possessing and hideing her gun, because of an unwarranted fear of himself or lawfirm becoming witnesses, constitutes ineffective assistance rather than sound stragety. As a result of this failure, the defendant was deprived of the assistance of counsel and the verdict must be Terminated as the product of an unfair and unreliable trial!.

In the present matter, the record reflects attorney Mann's reason for not cross-examining Bionchi on her prior confession's and prior sworn statement, offered on the record during a sidebar just before her false testimony: "What [the government] can't do,Judge, is suggest in any fashion, make any suggestions at all without making our office a witness about things we did. If they want to go down that road, Judge, then I'm going to move for a mistrial because we absolutely become witnesses at this point, or could become witnesses.

Tr. 9/28/04/, 47:20-48:1. Attorney Mann's statement during this sidbar conferance suggest a concern over himself becoming a witness. This concern carried over to his cross-examinattion of Bionchi, which did not include any question's or concern's regarding her confessions to many members of justice including himself, and her prior sworn statement!

Attorney Mann's concern abuut cross-examining Bionchi came across when he moved orally to limit her testimony, recognizing the possible extent of her direct false direct examination: "They can ask her about investigators. They can ask her about prior lawyers, I think. but they can't end up making me a witness. They can, but then I have to move for a mistrial." Tr. 9/28/04/, 47:5-9 (Add.23). He added that "if she testifies under oath that she has never said it's her gun, I don't think I have much choice but to at least go after that part of the statement. She has said it to lots of people besides me." Tr. 9/28/04/, 56:23-57:3.

I was Deprived of the truth seeking funktion of the trial when attorney Mann on his own free will did not cross-examine Susan Biochi in search of the truth in which she confessed the truth, and gave and adopted her true sworn statement.

Susan Bionchi falsely testified at trial on direct examination for the government after Recanting from the truth. A honest, truthful, cross-examination by attorney Mann would have more likely led to discovery of the truth before the court and jury!

The government's rebuttal witness Susan Bionchi's testimony was known and clearly seen perjurous! She recanted from the truth!

Robert Mann's failure to cross-examine Bionchi on her admission to the truth to so many diferent people before the jury caused serious prejudice that deprived me of a fair trial and left the jury blind of the truth and decieved.

Without a dought, there is a reasonable probability that but for Mann's unprofessional error's the results would have been diferent!
The jury would have been aware of the truth in which they would have deliberated with honesty in respect to the true facts of the case.
Without a dought, there is a reasonable probability that, absent of the truth in Bionchi's confessions would have changed the results of a guilty verdict, and undermine confidence in the outcome!
The jury was never aware of the fact.

I am suffering the consequences of counsel Robert Mann's Fails.
For I, not the attorney's of the court, the court, or jury,is suffering the consequences of a Wrongful Conviction!

CERTIFICATE OF SERVICE

I Alberto Rodriguez hereby certify under the penalty of perjury that the foregoing SUPPLEMENTS IN SUPPORT OF MOTION 2255 was placed in the institutional mail on the 8th day of AUG 2007 and mailed to THE HONORABLE CLERK FOR THE DISTRICT OF RHODE ISLAND.

Honorable Court Clerk,
One Exchange Terrace
Providence, R.I. 02903
District of Rhode Island.

Respectfully Submitted
Alberto Rodriguez
P.O. Box 1000
Otisville, N.Y. 10963

Alberto Rodriguez